March 13, 2010

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

APR 0 9 2010

JAMES R. LARSEN, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

Declaration of :

Jimmy Ellis, Clark
2094 Onion Creek Road Lot A
Colville, Washington
PH: 509-732-4154

**CV-10-104-EFS**

### Declaration in Lieu of Affidavit

I, Jimmy Ellis, Clark am an unenfranchised flesh and blood man above the age of eighteen, with first-hand knowledge and competent to testify to the following do declare;

"Indeed no more than affidavits is necessary to make a prima facie case." U.S. v. Kis, 658 F.2d 536 (CA7, 1921; however, a declaration may be used instead of an affidavit." Summers v. U.S. Dept. of Justice, 776 F. Supp. 575, 577 (D.C. 1991) 99.

"Affidavits uncontested allegations in affidavit must be accepted as true." Morris v. National Cash Register, 44 S.W.2d 433, N. 10898.

This declaration is intended to cover the events or crimes relating to the theft of Jimmy Ellis, Clark and Toni Lea, Clark's land in 2003 by the criminal conspiracy of Lloyd Nickel, Rebecca Baker, Tim Blackman, Susan Harnash and others, which were named and documented in previous charges and supporting admissible evidence.

The following information can be supported with documentation upon request, with certified court transcripts, taped conversations and many other supporting documents in support of the criminal theft, extortion, possession of stolen property, official misconduct, criminal impersonation and many criminal acts under the RCW's and 18 USC relating to violations of or Constitutionally protected Rights.

The following will document the intentional, deliberate and malicious theft of personal property belonging to the Clarks, in excess of 25,000 dollars. A lawfully recorded conversation with Stevens county prosecutor Timothy Rasmussen, documenting

the criminal conspiracy engaged in by local officials to 'teach us a lesson' for being so outspoken concerning the criminal conduct and incompetence of alleged local officials in Stevens county and alleged state judges and other alleged public officials.

1. In November of 2003, alleged officials in Stevens county, Washington illegally foreclosed on my property.

2. After finding evidence supporting the illegal theft, I submitted a criminal complaint with supporting affidavit to Stevens county Superior Court Administrator Evelyn Bell.

3. Ms. Bell forwarded my complaint and affidavit to Spokane county Superior Court Judge Linda Tompkins, who determined there was probable cause.

4. On April 20, 2005 an order was sent from Judge Tompkin's office to Stevens county Superior Court Clerk Patricia Chester directing her to file this injured party's criminal complaint. (see RCW 10.16.110)

5. Through a criminal conspiracy between Ms. Chester, Lloyd Nickel and other alleged officials my criminal complaint was illegally converted to a civil action, in violation of RCW 9.62.020.

6. After about 3 weeks of no response I contacted the Stevens County Superior Court Clerk's office and was informed that my complaint was now a civil action and "it was now my move".

7. I informed the clerk that I did not file a civil action and would not participate and the clerk told me there was nothing she could do.

8. In early May of 2005 I received a package of documents in the mail from Michael E. McFarland of the firm Evans, Craven, Lackie, P.S. requesting that I file the documents in Federal Court.

9. The documents, along with a written notice to Mr. McFarland informing him that I did not file a civil action was returned to him.

10. On May 12, 2005 I received another package of documents from mr. McFarland informing me that he had moved the action to Federal District Court in Spokane; without my permission and in violation of RCW 9.62.020 and RPC 3.1 and 3.3.

11. In Mr. McFarland's "Notice of Removal of Action by Defendant Pursuant to 28 USC sec. 1441", Mr. McFarland admits his knowledge that this action was filed as a criminal complaint, but he chose to continue this criminal cover-up.

12. This injured party sent written notice to the United States District Court notifying them that I did not file a civil action and would not participate.

13. On August 12, 2005 I received a copy of a written order from United States District Court Judge Fred Van Sickle dated August 10, 2005.

14. The "Order" from Judge Van Sickle stated in plain language "Jimmy Ellis Clark having advised the District Court Executive by letter dated August 3, 2005 that he did not file a civil action in Stevens County Superior Court; and the Court having determined the docket does not contain a pleading that sets forth a claim over which the Court could exercise jurisdiction or with respect to which the Court could take any action;"

15. The "Order" transmitted to Stevens County Superior Court Clerk contained the following – "Order; DCE shall transmit this file to the clerk of Stevens County Superior Court and to close this file. It was signed by Judge Van Sickle.

16. Again, on September 30, 2005 alleged Judge Greg Sypolt issued an illegal order in violation of RCW 9.62.020 and numerous C.J.C. and R.P.C.'s reactivating the false civil suit which had already been dismissed by Judge Van Sickle.

17. If the Federal Court could not acquire jurisdiction without a summons and complaint then, neither could the state court.

18. But again, this injured party sent a written notice that I had not filed a civil action, but this time my notice was ignored and alleged Judge Sypolt illegally dismissed the action in favor of the defendant.

19. it now appears that alleged Judge Sypolt conspired with Lloyd Nickel, Ms. Chester and others to cover-up many crimes going on in Stevens and Spokane County.

20. After the cover-up was complete another conspiracy was initiated by Lloyd Nickel, Kimberly Zipfel, Patrick Monasmith, alleged Judge Nielson and alleged Stevens County Sheriff Craig Thayer by use of an illegal 'unlawful Detainer Action."

21. Through false and misrepresented filings by attorney Patrick Monasmith (also a Superior Court Commissioner) and the help of alleged Judge Nielson a 'Writ of Restitution' was issued in violation of the RCW's and case law in January 10, 2006.

22. A fraudulent Writ of Restitution was issued against the Clark's land in case #24902-6-III on January 10, 2006.

23 All RCW's, USC's and case law quoted in this declaration have been read and are understood by declarant.

24. The illegal writ related to granting Zipfel possession of the subject property **"the Clark's land",** not to any of the Clark's personal property.

25. Writ dated January 10, 2006 contained the statement *'Forcible eviction means that after the date and time listed above the Sheriff's Office and representatives of the plaintiff (landlord) will be at the premises and will remove you and all your property. If the writ of restitution was issued pursuant to RCW 59.12.100 and/or 59.18.410.*

*(c) If the tenant objects to storage of the property, it will not be stored but will be placed on the nearest public property; and'*

*You are allowed to claim your property from the public right-of-way, or if stored by landlord by making the necessary arrangements. For you to pick up your personal property. However, if you go back onto the premises from which you were evicted you are subject to arrest for Criminal Trespass or Burglary.*

Page 5 of Writ entitled "*Important Notice About Your Personal Property*

*(5) You have the right to object to storage of your personal property by your landlord. ... if you object to storage, your personal property will not be stored, but will be placed on the nearest public property, ...*

"*Voluntary compliance with judgment (e.q., a party who pays the amount of a judgment or performs the act ordered by a decree may be held to have waived the right to appeal.) However, performance must be voluntary. Where a judgment is executed by officers of the Court and thereby satisfied, the judgment debtor's right to appeal survives.*" Reitano v. Yankwich, 38 Cal.2d 1 (1951).

## RCW 59.18.230

**Waiver of chapter provisions prohibited — Provisions prohibited from rental agreement — Distress for rent abolished — Detention of personal property for rent — Remedies.**

*(4) The common law right of the landlord of distress for rent is hereby abolished for property covered by this chapter. Any provision in a rental agreement creating a lien upon the personal property of the tenant or authorizing a distress for rent is null and void and of no force and effect. Any landlord who takes or detains the personal property of a tenant without the specific written consent of the tenant to such incident of taking or detention, and who, after written demand by the tenant for the return of his personal property, refuses to return the same promptly shall be liable to the tenant for the value of the property retained, actual damages, and if the refusal is intentional, may also be liable for damages of up to one hundred dollars per day but not to exceed one thousand dollars, for each day or part of a day that the tenant is deprived of his property. The prevailing party may recover his costs of suit and a reasonable attorney's fee.*

*In any action, including actions pursuant to chapters 7.64 or 12.28 RCW, brought by a tenant or other person to recover possession of his personal property taken or detained by a landlord in violation of this section, the court, upon motion and after notice to the*

*opposing parties, may waive or reduce any bond requirements where it appears to be to the satisfaction of the court that the moving party is proceeding in good faith and has, prima facie, a meritorious claim for immediate delivery or redelivery of said property.*

**RCW 59.18.312**

**Writ of restitution — Storage and sale of tenant's property — Use of proceeds from sale — Service by sheriff, form.**

*(1) A landlord shall, upon the execution of a writ of restitution by the sheriff, enter and take possession of any property of the tenant found on the premises. The landlord may store the property in any reasonably secure place, including the premises, and sell or dispose of the property as provided under subsection (3) of this section. The landlord must store the property if the tenant serves a written request to do so on the landlord or the landlord's representative by any of the methods described in RCW 59.18.365 no later than three days after service of the writ. A landlord may elect to store the property without such a request unless the tenant or the tenant's representative objects to the storage of the property.* <u>**If the tenant or the tenant's representative objects to the storage of the property or the landlord elects not to store the property because the tenant has not served a written request on the landlord to do so, the property shall be deposited upon the nearest public property and may not be stored by the landlord.**</u> *If the landlord knows that the tenant is a person with a disability as defined in RCW 49.60.040 (as amended by chapter 317, Laws of 2007) and the disability impairs or prevents the tenant or the tenant's representative from making a written request for storage, it must be presumed that the tenant has requested the storage of the property as provided in this section unless the tenant objects in writing.*

<u>**(4) Nothing in this section shall be construed as creating a right of distress for rent.**</u>

*"A 1991 addition to the Residential Landlord-tenant Act makes elaborate provision for the landlord's removal of the tenant's personal property upon the sheriff's execution of a writ of restitution.* <u>*If it was ever true that the landlord had no responsibility for items so removed, that is no longer true.*</u> *The landlord is required to store the* <u>**goods or to relinquish possession if the tenant demands it,**</u>*...*

*...,whereas a tenant who is escorted off the premises by a sheriff upon the execution of a writ of restitution,* <u>*does not leave on his or her own free will and is leaving without removing all his or her desired belongings."*</u> <u>*Parker v. Taylor*</u>*, 136 Wn. App. 524, 150 P.3d 127, 2007 Wash. App. LEXIS 18 (2007)*

26. The Clarks gave repeated written and verbal demand for the return of our personal property. Ample documentation is available.

27. Further, as shown by the order created by Mr. Monasmith and approved and signed by (judge) Alan Nielson on January 10, 2006 was for "Unlawful Detainer, ect."

*Hill v. Hill, 3 Wn. App. 783, 477 P.2d 931, 1970 Wash. App. LEXIS 1038 (1970)*

The remaining question relates to the plaintiff's remedy to recover possession. The summons and complaint below did not make it clear on the face of the record whether the plaintiff was proceeding under unlawful detainer statutes (RCW 59.12), under ejectment and quieting title statutes (RCW 7.28), or possibly for other relief based on the right to possession. *Woodward v. Blanchett, 36 Wn.2d 27, 216 P.2d 228 (1950).* HNS The burden was upon the plaintiff to establish her claim and to make clear just what it is. She must elect whether to proceed by unlawful detainer or by way of ejectment or otherwise. *See Petsch v. Willman, 29 Wn.2d 136, 185 P.2d 992 (1947).* If plaintiff invokes unlawful detainer jurisdiction, the superior court sits as a court of limited jurisdiction. Such a court cannot entertain an action for ejectment which is maintainable only before a court of general jurisdiction. Accordingly, the court cannot convert the unlawful detainer action into one for ejectment or other actions maintainable [***11] before a court of general jurisdiction. *Tuschoff v. Westover, 65 Wn.2d 69, 395 P.2d 630 (1964); Sundholm v. Patch, 62 Wn.2d 244, 382 P.2d 262 (1963); Young v. Riley, 59 Wn.2d 50, 365 P.2d 769 (1961); Little v. Catania, 48 Wn.2d 890, 297 P.2d 255 (1956); State ex rel. Seaborn Shipyards Co. v. Superior Court, 102 Wash. 215, 172 P. 826 (1918); Jeffries v. Spencer, 86 Wash. 133, 149 P. 651 (1915).*

28. Attorney Patrick Monasmith, as can be documented, lied in his pleadings submitted to the Washington Appeals Court, by claiming that he had filed ejectment proceedings against the Clark's under RCW 7.28, this can be proved by simply looking at the pleadings filed and the order entered by alleged Judge Neilson, that it was, in fact, an unlawful detainer action.

*"The burden of proof is upon a plaintiff to establish one's claim and to make clear just what it is. She must elect whether to proceed by unlawful detainer or by way of ejectment or otherwise. If the plaintiff invokes unlawful detainer jurisdiction, the superior court sits as a court of limited jurisdiction. **Such a court cannot entertain an action for ejectment which is maintainable only before a court of general jurisdiction. Accordingly, the court cannot convert an unlawful detainer action into one of ejectment or other action maintainable before a court of general jurisdiction." Hill v. Hill, 3 Wn. App. 783, 477 P.2d 931 91970).***

29. Mr. Monasmith even stated in court on January 27, 2006
   *P-13 line 8-11*
   *MR. MONASMITH: I apologize to Ms. Clark if indeed there was some sort of inappropriate appearance, but as the court knows, both judges and lawyers are forbidden from having ex parte contact about a matter before the court, and I have every expectation **that any contact I may have had with either this court, this judge or any other judge would have been an ex parte matter involving another case, and certainly not this one.***

30. Mr. Monasmith and (judge) Nielson intentionally misrepresented the RCW's and case law relating to excise tax liability, notice and proof of ownership.

31. Mr. Monasmith shows his ignorance and/or intentional misrepresentation of the facts and the RCW's and the lack of knowledge of the RCW's by (judge) Nielson relating to the paying of an excise tax on the property involved in this case by the Clark's, who <u>bought</u> said property in 1999.

> *RCW Title 82 – Excise Taxes*
> *(1) RCW 82.45.080 – Tax is <u>seller's</u> obligation.*
> *(2) 82.46.050 – Tax is <u>seller's</u> obligation.*

32. Mr. Monasmith misrepresented the Clark's right to register their property, which shows also that Mr. Monasmith knew there was no landlord-tenant relationship between the Clarks and Zipfel.

> *(1) RCW 64.04.010 – Conveyances…*
> *Every conveyance of real estate, or interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed. …or evidence of interest by assignment by the holder thereof by a simple writing or by endorsement on the back of such certificate <u>or</u> evidence of interest <u>or</u> delivery thereof to the vendee, such <u>transfer shall be valid</u>, and all assignments or transfers hereby authorized and heretofore made in accordance with the provisions of this section <u>are hereby declared to be legal and valid</u>.*

> *RCW 64.08.010 – Who may take acknowledgements of deeds…, required to be acknowledged may be taken in this state before…a qualified notary public…and all said instruments heretofore executed and acknowledged according to the provisions of this section <u>are hereby declared</u> legal and valid.*

> *RCW 65.08.070 – Real property conveyance to be recorded. A conveyance of real property, when acknowledged by the person executing the same (the acknowledgement being certified as required by law), <u>may be recorded</u> in the office where the property is situated. <u>Every such conveyance not so recorded is void as</u> against any subsequent purchaser or mortgagee <u>in good faith</u> and for valuable consideration <u>from the same vendor</u>, his heirs or devisees, of the same real property…*

33. Mr. Monasmith filed an affidavit by his client, Mr. Zipfel, stating that he was informed by Mr. Clark prior to buying Clark's property that there was a dispute as to the ownership of said property.

34. Mr. Monasmith also stated on the record in case #24902-6-III, January 10, 2006 – Transcript Page 2 lines 11-15;
> *"It appears that the Clarks most recent material includes a copy of a deed and evidence of some sort of transaction with the prior record owner at Mr. Montgomery's office, …*

35. (judge) Nielson also admitted his knowledge that we had not been given notice by the county of the foreclosure hearing. Case #24902-6-III – January 10, 2006 Official transcript Page 11 lines 1-3;

*THE COURT: - even though you were on the property, you didn't get notice, and then the county took your property away from you and then sold it to Mr. Zipfel.*

Also Page 10 lines 17-24;

*THE COURT: Well, you know, I guess a couple of things. One is that, in part, what you're arguing and your materials bring up is something that is <u>outside of the usual system of law as used here in the courtroom</u>. And so to some extent, we're like two different trains here passing in the night. <u>I don't</u> understand, I guess would be one way to put it, a good part of your arguments. <u>__But the parts that I do understand, one would be that you didn't get notice, so to speak,__</u>…*

36. Mr. Monasmith and (judge) Nielson are supposed to be trained in the law and are both supposed to be bound by their oaths to uphold the law, comply with the Code of Judicial Conduct and Rules of Professional Conduct, not to make false and misleading statements or misrepresent laws and case law.

37. The statements by Mr. Monasmith and (judge) Nielson relating to the Clark's ownership of their property was intentional misrepresentation to cover up the criminal fraud by STEVENS COUNTY alleged officials.

37. Court Rule CR-11 requires a reasonable investigation into legal principles, laws and case law, before filing proceedings.

See *<u>Smith v. Lewis</u>, 13 Cal.3d 349, 118 Cal. Rptr. 621, 530 P.2d 589, 1975 Cal. LEXIS 174, 78 A.L.R.3d 231 (1975)*

*<u>Piazza v. Carson City</u>, 652 F. Supp. 1394, 1987 U.S. Dist. LEXIS 1015 (D. Nev. 1987)*

*<u>In re Disciplinary Proceedings against Fischer</u>, 176 Wis.2d 145, 499 N.W.2d 677, 1993 Wisc. LEXIS 507 (Wis. 1993)*

*<u>Jewish Center of Sussex City v. Whale</u>, N.J. 432 A.2d 521 (1981), on 'misrepresentation'.*

38. (judge) Nielson also quotes a case in court on January 27, 2006 that he must have read Mr. Monasmith's mind on, since they claimed they had no ex parte communication regarding this matter, and the case was not briefed in any of Monasmith's pleadings

Transcript case #05-2-00523-6 – January 27, 2006 Page 21 lines 12-19

*THE COURT: And there is one case here in particular, and I'll just state it for the record, but it's one I know Mr. Monasmith looked at, Puget Sound Investment Group v. Bridges.*

39. The case, Puget Sound, as quoted by (judge) Nielson in support of the plaintiff's position, was misinterpreted and misrepresented by him. Following is a quotation from the case;

*Sound Inv. Group, Inc. v. Bridges*, 92 Wn. App. 523, 963 P.2d 944, 1998 Wash. App. LEXIS 1390 (1998) **CASE SUMMARY:**

**PROCEDURAL POSTURE:** *Appellant purchaser sought review of a decision from the Superior Court of Snohomish County (Washington), which dismissed his unlawful detainer action against respondent homeowner pursuant to Wash. Rev. Code § 59.12.030(6).*

**OVERVIEW:** *The purchaser bought the property at a tax sale after the Internal Revenue Service had foreclosed on the property, and the purchaser received a quitclaim deed. The homeowner refused to surrender possession of the property.* **The court affirmed the superior court's decision that dismissed the purchaser's unlawful detainer action because the unlawful detainer chapter, Wash. Rev. Code § 59.12, did not provide a forum for litigating claims to title.** *The legislature failed to provide authority in § 59.12 for a purchaser of real property at a federal income tax foreclosure sale to proceed with an unlawful detainer action.* **Because the homeowner held a statutory warranty deed, the purchaser was required to establish superior title before he was allowed to proceed with an unlawful detainer action pursuant to Wash. Rev. Code § 59.12.030(6).** *The appropriate procedure was for the purchaser to proceed with an action for ejectment and to quiet title pursuant to Wash. Rev. Code § 7.28.*

**OUTCOME:** *The court affirmed the superior court's decision that dismissed the purchaser's unlawful detainer action against the homeowner.*

**[5] Landlord and Tenant — Unlawful Detainer — Right of Action — Tenant Holding Under "Color of Title" — Determination of Superior Title — Necessity** *For purposes of RCW 59.12.030(6), under which a person's occupation of land without the owner's permission and without color of title constitutes an unlawful detainer, an occupation of land is under "color of title" if the person occupying the land holds a statutory warranty deed thereto. Under such circumstances, the putative owner claiming unlawful detainer must first establish superior title, by an action in ejectment and quiet title under RCW 7.28, before the remedy of unlawful detainer may be pursued.*

40. The previous pages only cover a small number of the criminal misrepresentations and criminal conspiracy by Mr. Monasmith and (judge) Nielson as confirmed by court transcripts and their own paperwork.

41. At this point I will cover just some of the admissible evidence proving the conspiracy to commit theft in the first degree, possession of stolen property, extortion and other crimes by alleged Stevens county officials and private persons.

42. On June 6, 2006 on the record Mr. Monasmith and (judge) Nielson admitted it had been over five months since the Writ of Restitution had been issued; from the official transcript Page 1 Lines 17-21;

MONASMITH: *"The Clarks continue to occupy that property. The sheriff's office has attempted to execute a writ of restitution; for whatever reason, has not been able to*

do so. The Clarks <u>in our judgment</u>, are clearly in contempt of the court's order requiring them to vacate."

Page 2 Lines 21-23;

THE COURT: "And now, Mr. Monasmith, the court---I sure enough, back in February, signed the last order that directed the Clarks to vacate the property.

(A) Alleged Sheriff's Thayer's <u>return</u> on the writ – February 10, 2006 nullified any authority to attempt to enforce the writ at a later date.

(B) The writ confirms it was not executed, therefore could be no violation of the court's order by the Clarks and no trespass or burglary.

(C) Even though the writ had already returned without execution, RCW 6.17.120 would have controlled if it had not been returned.

(D) RCW 6.17.120 – Sheriff's duty on receiving writ – Order of executing writs. …and the execution <u>shall</u> be returned with a report of proceedings <u>under the within sixty days after its date to the clerk who issued it</u>.

(E) "On failure to return writ of execution within sixty days from its date, writ is ineffectual<u>." Chase v. Cannon</u>, (1891) 47 F. 674.

(A) <u>State v. Batten</u>, 20 Wn. App. 77, 578 P.2d 896, 1978 Wash. App. LEXIS 2386 (1978), "While it has been held improper to use a criminal trespass action to try disputed rights in real property. State Larason, 75 Ohio L. Abst. 211, 143 N.E. 502 (C.P. 1956); Barber v. State, 199 Ind. 146, 155 N.E. 819 (1927); Steele v. State, 191 Ind. 350, 132 N.E. 739, 18 A.L.R. 500 (1921)…

"Where writ of mandate cannot through **lapse of time or other reason**, be complied with the obligation imposed **by the writ will be relieved**." Town of Uniontown v. Klemgard, 156 Wn. 267, 286 P. 648 (1930).

43. Even more criminal conspiracy against the Clarks is shown by the fact that the Clarks were first charged on February 16, 2006 with criminal trespass, for violating a writ that was never executed, charges were dismissed in the Clark's favor.

44. On June 6, 2006 the so-called court found the Clarks guilty of contempt of a writ that no longer existed.

45. The incompetent and biased (judge) Nielson then ordered the Clarks off of their property without any jurisdiction, since the case was accepted by the Washington Appeals court on February 1, 2006.

46. Even though the so-called court had no jurisdiction to act, the Clarks were illegally ordered off of their property.

47. In the hearing on June 6, 2006 Mr. Monasmith assured the court that the Clark's personal property would be moved by a moving company.

48. Transcript of Hearing – Case # 2005-2-00523-6 – June 6, 2006
*Page 11 Lines 2-8*
*THE COURT: And I appreciate that, Mr. and Mrs. Clark. And then the second thing would be to preserve their property there on the place in some fashion, and that requires some thinking too so that nothing's wasted-*
*MR. CLARK: That's right.*
*THE COURT: -or ruined in the process…*
*Page 11 Lines 15-23*
*MR. NICKEL: And, Your Honor, as you're aware, that normally is a requirement of the plaintiff to arrange for a moving company or someone such as a moving company to actually physically remove those possessions. It would not be the Sheriff's office that would physically remove that. We would supervise the removal of someone who Zipfel chose to remove those articles, unless Mr. and Mrs. Clark removed them by themselves.*
*Page 12 Lines 2-3*
*MR. MONASMITH: We would be prepared to hire a moving company.*
*THE COURT: Okay-*
*Page 12 Lines 11-15*
*THE COURT: All right, counsel, this is what I came up with here, language about this appeal, but Sheriff can break and enter and remove Clarks, Jimmy Clark and Toni Clark. Also Clark's personal property shall be removed public right of way and relocated by plaintiff's agents, if necessary.*
*Page 12 Lines 19-21*
*MR . MONASMITH: Well, we said we'd take it to the public right of way, and if they're- if they want to go some other place we'll take it there.*

49. On June 9, 2006 alleged Sheriff Thayer arrived at our property with six alleged deputies and ordered us off of our property, also without any service of process.

50. Mr. Zipfel was then escorted on to our property with a U-Haul truck and two men from the Red Bull Lounge.

51. As stated in the alleged sheriff's return after this fraudulent action Mr. Zipfel only removed **one** load of our personal property.

52. When I asked Mr. Zipfel when he would return he stated, "I am not going to tell you." This was heard by Mr. Oches, who was present.

53. I was forced to camp out for what turned out to be over seven months on a neighboring property in order to keep an eye on our personal property that remained in and around our home.

54. On August 4, 2006, the Clarks filed for a show cause to force Mr. Zipfel to return our personal property, (judge) Nielson now states that since we had filed an appeal he had no jurisdiction.

55. In October of 2006 we filed to the appeals court for an order requiring Zipfel to return our personal property.

56. Mr. Monasmith assured the appeals court commissioner that our personal property would be delivered to any where in the county we wanted.

57. About 3 weeks later Zipfel again showed up with a U-Haul truck and three men from the Red Bull and hauled two loads from my shop and from around the outside of our home, without any supervision from the sheriff's office.

58. After these two loads Zipfel was again asked when he would return and finish removing our personal property; again, he stated he was not going to say.

59. Zipfel did not return to remove the rest of our personal property that remained in the barn, in the shop, ect., and he never even made any attempt to return any of our personal property and personal belongings from inside our home.

60. Even after Monasmith assured (judge) Nielson our personal property would be returned to us and subsequently assured the appellate court commissioner that our personal property would be returned to us, he conspired with Zipfel and others by sending us a "Notice of Abandonment and Sale or Disposition" quoting his authority as RCW 58.18.313(3), on September 7, 2006.

61. Zipfel even attempted to have John Hubbs steal the International dozer from the property and sell, because he needed the money.

62. Monasmith was also overheard talking to three of the criminal impersonators from the sheriff's office; the statement was made, *"What do we need to do get a SWAT team out there to get rid of 'em?"* This was heard after a civil hearing in which the sheriff's office and alleged deputies had no business.

63. After almost a year of unauthorized control of our personal property by Zipfel, with the concerted assistance of Monasmith, Nielson and alleged sheriff Thayer, we sent a notice to the alleged county prosecutor, alleged sheriff and alleged judge Nielson that we intended to move back on to our land and reclaim our personal property, if there was no objection.

64. After three weeks, no one made any response at all.

65. The total amount of personal property that was removed by Zipfel was returned by me in just 5 pick-up truck loads.

66. Now, even though case #2005-2-000523-6 was still on appeal and a lis pendens was on file in the Stevens county auditor's office, Zipfel was allowed to conspire with Vaagen Brothers Lumber and Columbia Cedar to illegally log our land, while we were in possession.

67. Josh Anderson of Vaagen Brothers was given a certified copy of the lis pendens, but refused to stop the logging.

68. The sub-contractor for Vaagen Brothers, Don Lentz, without lawful authority removed a locked gate and entered upon the disputed property, and conspired in the theft of several thousand dollars worth of timber.

69. In an attempt to stop the theft, and because neither the sheriff or the prosecutor would do anything, I went up to where Lentz was operating a large forwarder.

70. There was a log deck about 60 feet long, but only about 2 feet high.

71. I heard Lentz further up the hill, so I got on top of the log deck and waited.

72. Lentz returned and pulled parallel to the log deck and motioned for me to move; I told him, "no."

73. Lentz then moved forward about four feet, picked up about six logs with the claw arm on the forwarder and swung then over next to where I was standing; I still refused to move.

74. At this point Lentz released the logs and one of them slipped and pinned my feet causing me to fall backward.

75. Lentz, seeing that I was pinned could not move from the log deck, backed up about 4 feet and finished unloading the rest of the logs from the forwarder, over my head and stacking them behind me.

76. Lentz then pulled the forwarder about 40 feet away and parked it.

77. A couple of minutes later alleged sheriff's deputy Murray arrived.

78. I was still pinned on the log pile, and had been recording everything on tape the entire time.

79. I told Murray my feet were pinned. After several minutes he climbed up on the log deck, after seeing my feet were indeed under a log, which had several on top of it and Murray attempted to lift it enough to allow me to remove my feet.

80. Murray's attempt failed, so he made a second try, allowing me to jerk my feet from beneath the log.

81. I told Murray that I wanted assault charges filed against Lentz. This was not done.

82. This event ended when Josh Anderson of Vaagen Brothers agreed to hold all the money for the logs until the dispute on ownership of the land was settled. This did not happen.

83. On November 7, 2007 I was falsely charged with criminal trespass and criminal contempt again, by a criminal impersonator from the prosecutor's office.

84. I filed a motion requiring the alleged prosecutor to produce his authority to represent the state.

85. Judge Austin asked alleged deputy prosecutor if he had an oath of office and Troberg lied to court twice when he told the judge he did have an oath of office.

86. A certified copy of a PDA from the Stevens county auditor, Tim Gray, was presented to the court confirming there was no such oath. This was ignored by the court.

87. At the third so-called _telephone_ arraignment, Troberg still could not produce an oath of office.

88. At this third hearing Judge Austin allowed Troberg two recesses to locate this non-existent oath.

89. After returning to the court room, after the second recess, Troberg produced a copy of an oath of office signed by the previous alleged county prosecutor., Mr. Wetle, signed in 2003 and file stamped the same day it was presented to the court with and affidavit by the auditor Tim Gray stating that he had subsequently found it.

(B) *RCW 40.16.030 – Offering false instrument for filing or record.*

(C) *Black's Law Dictionary 6th Ed. defines "False" – Not true;*

90. This case was also dismissed in my favor, September 27, 2007.

91. Now, just to show the malicious prosecution involved against me by the criminal officials in Stevens county, my wife was also living on our property, but was not charged.

92. Troberg even asked the court for an order denying me the right to return to my home and my wife who was allowed to remain in the house.

93. This same condition of keeping us from returning to our home was used in February of 2006.

94. Monasmith conspired with (judge) Nielson who stated he had no jurisdiction, because the case was on appeal, to remove my legally filed lis pendens in violation of *RCW 4.28.330 – Lis pendens in actions affecting title to real estate.*
    *... And the court in which the said action was commenced may, at its discretion, <u>at any time after the action shall be settled</u>, discontinued or abated, ...*

95. Now that the false criminal charges had failed, again Monasmith, while having knowledge that the case #2005-00523-6 was still on appeal and that (judge) Nielson had no jurisdiction, conspired again and filed a show cause action for contempt and sanctions on November 6, 2007.

96. Monasmith also filed a new Unlawful Detainer Action on November 6, 2007, as well.

97. This last illegal show cause action was held on November 20, 2007 at 1:30 P.M.

98. Even more of the conspiracy between Monasmith, the prosecutor's office, the sheriff's office and (judge) Nielson is shown by the "Show Cause Order" submitted to the court and then signed by incompetent or just plain criminal (judge) Nielson.

99. Under No. 1 of the conditions to purge there is some illegible hand-written words, which could have been added before or after being submitted to the court.
    *SHOW CAUSE ORDER – November 6, 2007*
        *1. That you vacate the subject property located at 2567 Bodie Mountain Road and described as the E1/2 of the NE1/4 of the NW1/4 of section 28, Township 39 North, Range 40 East, W.M., Stevens County. Washington, within 72 hours of an order directing you to do so; (there is an illegible hand-written statement added to this order item)*

100. The fact that the ownership of property was still on appeal and Stevens county superior court had no jurisdiction to direct the sheriff to do anything relating to this case, but would be within the criminal elements of RCW 9A.56.130 among others.
    *SHOW CAUSE ORDER – November 6, 2007*
        *2. That the Stevens County Sheriff be directed to remove you as a trespasser or for obstruction of justice in the event of non-compliance.*

101. Under No. 3 of the show cause order, if the State Appeals Court won't make this ruling, the lower court in making such a ruling would also be within the elements of RCW 9A.56.130 – Extortion in the second degree, and violation of due process.
    *SHOW CAUSE ORDER – November 6, 2007*

*3. **That any response you might make to this Motion not be considered unless and until you pay all fees and costs awarded to Plaintiff by this court and the Court of Appeals; and***

102. Under No. 4 of the Show Cause Order, now the second part is in direct violation of my Constitutionally protected "Right" to go and remain anywhere I lawfully wish.

*SHOW CAUSE ORDER – November 6, 2007*
        *4. That you be restrained from coming upon the subject property or remaining within one (1) mile thereof.*

103. The last unlawful detainer was never prosecuted.

104. The star chamber/kangaroo court show cause proceeding held on November 20, 2007 was in total violation of 18 USC sec. 241 and sec. 242 and violated our Right to due process.

105. Monasmith and (judge) Nielson conspired to rewrite and create law from the bench by rewording the RCW's relating to the removal of personal property.

106. How No. 3 of said order submitted by Monasmith and signed by (judge) Nielson on November 7, 2007 violated the Constitution and State and Federal law is easy to show.

        *(A) #3 on the Show Cause Order; That any response you might make to this Motion <u>not</u> be considered <u>unless and</u> until you pay all fees and costs awarded to Plaintiff by this court and the Court of Appeals;*

        *(B) From Zipfel's affidavit dated November 5, 2007 confirms more conspiracy involved and usurping of authority of the attorney and so-called judge in this case;*

        *<u>Page 2 lines 23 through</u>...of Zipfel's affidavit; "I ask that any responsive pleading they may file in this case be denied consideration unless and until they pay me the fees awarded by this court and the Court of Appeals. My Attorney submitted an affidavit of attorney's fees requesting payment of $4900.00, as shown in the attached Exhibit "C", <u>but the Court of Appeals will not issue an order for that amount until the Supreme Court accepts or rejects certiorari.</u> I am also asking for the <u>same purge conditions</u> as the July 6, 2006 Order on Show Cause;*

        *(C) "Relating to due process, the Washington Supreme Court has said: [6] Constitutional Law – Due Process – Procedural Due Process – Requirements – Meaningful Opportunity to be heard.  Though the procedures required by due process of law may vary according to the interest at stake, the fundamental requirement of due process of law is the opportunity to be heard at a meaningful time and in a <u>meaningful manner</u>." City of Redmond v. Moore, 151 Wn.2d 664 (2004)*

        *The American College Encyclopedic Dictionary defines;*
        *"Meaningful" – Full of meaning; significant.*
        *"Significant" – Important; of consequence.*

107. This show cause against us on November 20, 2007 was without jurisdiction, but was enforced through force of arms, not force of law.

108. As the show cause order stated we were not allowed to present any lawful defense, such as case law and RCW's.

109. Even though we did not leave the courthouse until about 5:00 P.M., four alleged sheriff's deputies showed up at our home again, at 12:00 noon on November 23, 2007 – 67 hours later.

110. The events were recorded, just like every encounter we had with public servants.

111. Alleged deputy Harbolt was asked if Zipfel was responsible for the safety and return of our personal property to which he "Yes."

112. We were again ordered off our property and forced to leave 95% of our personal property with Zipfel, who was also present.

113. On December 7, 2007 a written demand was sent to Monasmith for the return of our belongings as required by RCW 59.18.230(4).

114. Another letter was sent on December 17, 2007 to find out if Monasmith was going to respond.

115. Monasmith did finally respond on December 21, 2007 and as always before lied, misinterpreted the fact involving his and Zipfel's actions.

116. The Washington Appeals Court has already ruled on this type of issue, but because of ignorance and/or incompetence and corruption on the part of Monasmith, he ignored the law and misrepresented the facts resulting in us being unlawfully deprived of our personal property. See #4 Parker v. Taylor (supra)

117. After over a month of written demands for the return of our belongings, I reported the theft of our property to the sheriff's office.

118. No action was taken by the sheriff's office in violation of *RCW 36.28.010(1); RCW 59.18.390 and RCW 10.79.050.*
   *(A) RCW 36.28.010 – General duties.*
       *(1) Shall arrest and commit to prison all persons who break the peace, or attempt to break it, and all persons guilty of public offenses.*
       *(6) Shall keep and preserve the peace in their respective counties, and quiet and suppress all affrays, riots, unlawful assemblies and insurrections, for which purpose, and for the service of process in civil or criminal cases, and in apprehending or securing any person for felony or breach of the peace, they may*

*call to their aid such persons, or power of their county as they may deem necessary.*

*(B) RCW 59.18.390 – Forcible entry or detainer or unlawful detainer actions - ... The sheriff shall be immune from all civil liability for serving and enforcing writs of restitution **unless** the sheriff is grossly negligent in carrying out his or her duty.*

### RCW 10.79.050

### Restoration of stolen property to owner — Duties of officers.

*All property obtained by larceny, robbery or burglary, shall be restored to the owner; and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his rights to such property; and it shall be the duty of the officer who shall arrest any person charged as principal or accessory in any robbery or larceny, to secure the property alleged to have been stolen, and he shall be answerable for the same, and shall annex a schedule thereof to his return of the warrant.*

119. It is no surprise that alleged sheriff Thayer refuses to perform these duties since he also refuses to require his deputies to take the Constitutionally mandated oath of office and file this oath as required by RCW 36.16.060.

120. When the sheriff fails to comply with the requirements for qualifying for office, it becomes vacant without the necessity of any judicial process under RCW 42.12.010.

121. Qualifying for deputies is also required or that office is vacant and without lawful authority.

122. The failure of the candidate for sheriff or his appointed deputies to qualify would invoke RCW 36.28.090 into play and void acts by these intruders.

123. I have and will produce documents that show that county officials were informed of these vacancies as far back as 2004.

124. The theft of our persona property was also reported to the county prosecutor who also has a mandatory duties relating to felony crimes.

125. Since the theft of our personal property exceeded 1500 dollars it comes under 1st degree theft, a felony. The assault by Lentz involved a deadly weapon which was likely to produce great bodily harm or death, which is also a felony.. These, among other crimes reported to Stevens county prosecutor Timothy Rasmussen made it mandatory under his oath of office, the duties of his office and my Right to the protection of government in life, liberty and property.

***RCW 10.16.110***

***Statement of prosecuting attorney if no information filed — Court action.***

*It shall be the duty of the prosecuting attorney of the proper county to inquire into and make full examination of all the facts and circumstances connected with any case of preliminary examination, as provided by law, touching the commission of any offense wherein the offender shall be committed to jail, or become recognized or held to bail; <u>**and if the prosecuting attorney shall determine in any such case that an information ought not to be filed, he shall make, subscribe and file with the clerk of the court a statement in writing containing his reasons, in fact and in law, for not filing an information in such case**</u>, and such statement shall be filed at and during the session of court at which the offender shall be held for his appearance: PROVIDED, That in such case such court may examine such statement, together with the evidence filed in the case, and if upon such examination the court shall not be satisfied with such statement, the prosecuting attorney shall be directed by the court to file the proper information and bring the case to trial.*

In support of RCW 10.16.110 above;

<u>*State ex rel. Romano v. Yakey,*</u> *43 Wash. 15, 85 P. 990 (1906) "… it is of the highest importance that every charge of violation of the criminal laws of the state should be carefully, conscientiously, and fearlessly investigated by the officers charged with that duty, and <u>the theory that the prosecuting attorney of the several counties must determine first and finally who shall prosecuted and who shall not, **finds no support in the** </u>***law.***"*

126. Mr. Rasmussen's duties are clearly defined relating to felony crimes;
*"Where right of anyone under statute depends upon giving word "shall" imperative construction, "shall" is presumed to have been used in reference to that right or benefit and it receives mandatory interpretation." <u>Jordan v. O'Brien,</u> 486 P.2d, 79 Wash. 2d 406.*

*RCW 36.27.020 Duties. The prosecuting attorney <u>shall</u>.*
*(6) <u>institute and prosecute</u> proceedings before magistrates for the arrest of persons <u>charged with or reasonably suspected of felonies</u> when the prosecuting attorney has information that <u>any</u> such offense has been committed…*

*RCW 9.94A.411 – Evidentiary sufficiency.*
*(2) Decision to prosecute*
*(a) Standard:*
*crimes against person <u>will be filed</u> if sufficient admissible evidence exists,…*

*crimes against property/other crimes will be filed if the admissible evidence is of such convincing force...*

*Black's Law Dictionary 6th Ed. defines "Admissible evidence" – To be "admissible" evidence must be relevant and inter alis, to be "relevant" it must tend to establish material proposition. Smith v. State, Alaska, 431 P.2d 507, 509.*

*RCW 10.16.110 Statement of prosecuting attorney if no information filed – Court action*

*Black's Law Dictionary 6th Ed. defines "Recognized" _ Actually and publicly known.*

*State ex rel. Romano v. Yakey, 43 Wash. 15, 85 P. 990(1906), "In this state where grand juries are the exception and not the rule, it is of the highest importance that every charge of violation of the criminal laws of the state should be carefully, conscientiously, and fearlessly investigated by the officers charged with that duty, and the .theory that the prosecuting attorneys of the several counties must determine first and finally who shall be prosecuted, and who shall not, finds no support in the law. In the light of what we have said, did the magistrate to whom the application in question was made perform or attempt to perform the duties enjoined upon him by law? Manifestly he did not. He simply determined that it was the duty of the prosecuting attorney to make the investigation, and that he would not interfere with the duties or doings of that officer. The respondent's brief states that the matter under advisement and determined the application on its merits, and in disposing of the question, said many things and gave many reasons which do not appear in the application before us. These facts, if true, should appear in the return to the writ and not in argument. This court must accept the record as it finds it, and all defenses to the application must be interposed at that time.*

127. There has never been any court order, lawful or otherwise, authorizing the transferring of ownership or rights in personal property belonging to the Clarks to some one else.

128. In order to make sure that everyone reading this declaration is aware of the legal meanings of the words and elements involved in the crimes related herein; take notice of the following;

*Connelly v. General Construction Co., 269 U.S. 385, 391, "The dividing line between what is lawful and unlawful can not be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different construction. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things and providing a punishment for their violation should not admit of such a double meaning that the citizen may act upon the on conception of its requirements and the courts upon another."*

*State v. Swanson* (1976) 16 Wn. App. 179, 554 P.2d 364, "For purposes of RCW 9.01.050(1) (now 9A.04.030(1)), **which permits the punishment of any person committing any crime in whole or in part within the state,** a crime is committed in part when any essential element of it, as opposed to mere preliminaries, is committed within the state."

*City of Seattle v. Koh*, 26 Wash. App. 708, 614 P.2d 665 (1980), "When legislative body provides definitions for statutory terms, it is that definition to which the person must conform his conduct."

*American Legion Post #32 v. Walla Walla*, 116 Wn. 2d 1, 8 802 P.2d 784 (1991, "…when a statutory term is undefined dictionaries may consulted to determine it meaning.

*State v. Diebold* (1928) 152 Wn. 68, 277 P. 394, "In determining whether particular crime falls within certain provisions of criminal code, courts are concerned only with legal interpretation of legislative act."

129. I have offered and continue to offer admissible evidence relating to the crimes of theft, robbery, extortion, false imprisonment, assault, criminal conspiracy and more against my wife and me. I further demand my Constitutionally protected Rights to due process and equal protection of the law.

*RCW 9A.56.010 – Definitions – The following definitions are applicable in this chapter unless the context otherwise requires:*
  (4) "By color or aid of deception" means that the deception operated to bring about the obtaining of property or services; it is not necessary that the deception be the sole means of obtaining the property or service;
  (5) "Deception" occurs when the actor knowingly;
      (a) Creates or confirms another's false impression which the actor knows to be false;
      (c) Promises performance which the actor does not intend to perform or knows will not be performed;
  (8) "Obtain control over" *in addition* to its common meaning means:
      (a) In relation to property, to bring about a transfer or purported transfer to the obtainer or another of a legally recognized interest in the property:
  (9) "Owner" means a person, other than the actor, who has possession of or any other interest in the property or services and without whose consent the actor has no authority to avert control over the property or service.
  (11) "Receive" included, *but is not limited* to, acquiring title, possession, control, or a security interest, or any other interest in the property;
  (14) "Stolen" means obtained by theft, robbery, or extortion;

*RCW 9A.56.020 – Theft – Definition*, defense (1) "Theft" means:
  (a) To wrongfully obtain or exert unauthorized control over the property or service of another or the value thereof with intent to deprive him of such property or services; or
  (b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or

RCW 9A.56.100 – Extortion – Definition.

"Extortion" means knowingly to obtain or attempt to obtain by threat property or services of the owner, and specifically includes sexual favors.

"Threat" relating RCW 9A.56.120, RCW 9A.56.130, RCW 9A.72.110 and RCW 9A.72.120 is defined within RCW 9A.04.110(27).

RCW 9A.56.140 – Possessing stolen property. Definition p Presumption. (1) "Possessing stolen property" means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the owner or person entitled thereto.

(2) The fact that the person who stole the property has not been convicted, apprehended, or identified is not a defense to a charge of possessing stolen property.

RCW 9A.56.190 Robbery – Definition.

A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone, such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

RCW 9A.56.100 – Theft and larceny equated. All offense defined as larcenies outside of this title shall be treated as thefts as provided in this title.

RCW 9A.08.030 – Corporate and personal liability. (1) As used in this section:

(a) "Agent" means any director, officer, or employee of any corporation, or any other person who is authorized to act on behalf of the corporation:

(b) "Corporation" includes a joint stock association.

(c) "High managerial agent" means an officer or director of a corporation or any other agent in a position of comparable authority with respect to the formulation of corporate policy or the supervision in a managerial capacity of subordinate employees.

(3) A Person is criminally liable for conduct constituting an offense which he performs or causes to be performed in the name of or on behalf of a corporation to the same extent as if such conduct were performed in his own name or behalf.

(5) Every corporation, whether foreign or domestic which shall violate any provision of RCW 9A.28.040, shall forfeit every right and franchise to do business in this state. The attorney general shall begin and conduct all actions and proceedings necessary to enforce the provisions of this subsection.

RCW 9A.28.040 Criminal conspiracy.

(1) A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to

*engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement.*

*(2) It shall not be a defense to criminal conspiracy that the person or persons with whom the accused is alleged to have conspired:*

*(a) Has not been prosecuted or convicted; or*

*(f) Is a law enforcement officer or other government agent who did not intend that a crime be committed.*

**"Where four persons entered into conspiracy to commit two felonies, one of which was fully consummated, each conspirator is chargeable with acts of each of the others, and so far is concerned, acts committed by one becomes acts of all"** *State v. Berry (1939) 200 Wn. 495, 93 P.2d 782.*

**"Before party can be held liable as conspirator, evidence must show that he entered in to agreement with other conspirators to accomplish object of conspiracy."** *Lewis Pac. Dairymen's Assn. v. Turner (1957) 50 Wn.2d 762, 314 P.2d 625; Couie v. Local Union No. 1849 United Brotherhood of Carpenters & Joiners (1957) 51 Wn.2d 108, 316 P.2d 473.*

**"Test of sufficiency of evidence in action for conspiracy is that facts and circumstances relied on to establish conspiracy must be inconsistent with lawful or honest purpose and reasonably consistent only with existence of conspiracy."** *Couie (Supra)*

130. Now, we have established the statutory elements for conspiracy and related crimes for those in public office who do not seem to know the elements that constitute particular crimes, or the duties imposed by law in relation the offices they have assumed.

131. There is one more thing that needs to be addressed, since I have been told by some of the incompetent so-called public officials within the State of Washington, that they, as officials, are immune to criminal charges;

132. Almost every attorney "in this state" seems to think that the only recourse against judges and attorneys is to file complaints with the Bar Association or Judicial Commission.

### RCW 9A.04.030 State Criminal Jurisdiction

*The following persons are liable to punishment:*

*(1) A person who commits in the state any crime, in whole or in part.*

*(2) A person who commits out of the state any act which, if committed within it, would be theft and is afterward found in the state with any of the stolen property.*

*(3) A person who being out of the state, counsels, causes, procures, aids, or abets another to commit a crime in this state.*

*(4) A person who, being out of the state, abducts or kidnaps by force or fraud, any person, contrary to the laws of the place where the act is committed, and brings, sends, or conveys such person into this state.*

*(5) A person who commits an act without the state which affects persons or property within the state, which, if committed within the state, would be a crime.*

*(6) A person who, being out of the state, makes a statement, declaration, verification, or certificate under RCW 9A.72.085 which, if made within the state, would be perjury.*

*(7) A person who commits an act onboard a conveyance within the state of Washington, including the airspace over the state of Washington, that subsequently lands, docks, or stops within the state which, if committed within the state, would be a crime.*

### RCW 9A.04.080 Limitations of actions.

(1) Prosecutions for criminal offenses shall not be commenced after the periods prescribed in this section.

(b) The following offenses shall not be prosecuted more than ten years after their commission:

(i) Any felony committed by a public officer if the commission is in connection with the duties of his or her office or constitutes a breach of his or her public duty or a violation of the oath of office;

*"Even judges, cloaked with absolute <u>civil</u> immunity for centuries, could be punished <u>criminally</u> for willful deprivation of constitutional rights on the strength of 18 USC sec. 242, the criminal analog of sec. 1983.<u>" O'Shea v. Littleton</u>, 414 U.S. 488, 503 (1974); cf. <u>Gravel v. United States</u>, 408 U.S. 606, 626 (1972)."The prosecutor would fare no better for his willful acts."*

*"The United States Supreme Court has asserted federal law is enforceable in state courts…because the Constitution and laws passed pursuant to it are as much laws in the State as laws passed by the state legislature." <u>Howlett v. Rose</u>, 496 U.S. 356, 367, 110 S. Ct. 2430, 110 L. Ed.2d 332 (1990<u>)." Sullins v. Rodriguez</u>, 281 Conn. 128, 913 A.2d 415, 2007 Conn. LEXIS 27 (2007)*

*Butz v. Economu 438 U.S. 478; 985 S. Ct. 2894 (1978).(June, 1978) "Our system of jurisprudence rests on the assumption that all individuals, whatever their position in government are subject to federal law;*

*"No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All officers of the government, from the highest to the lowest, are to obey it." United States v. Lee, 106 U.S. 220, 1 S. Ct. 240, 260, 27 L.Ed. 171 (1882).*

133. Everyone that I have reported the theft of my personal property to, which includes the county prosecutor, attorney general, governor, FBI, many judges and even the federal attorney general, have condoned and justified this theft through ignorance and incompetence, or with intent protect their fellow incompetent and corrupt attorney's and/or officials.

134. I am entitled to the same standards of evidence and protections of law as everyone else who are victims of crime.

135. The taking of the personal property, in excess of 25,000 dollars belonging to my wife and me, without any type of lawful process meets all the elements of theft in the 1st degree.

136. I have consistently produced and submitted copies of a legally recorded conversation my wife and I had with the Stevens county prosecutor, Mr. Rasmussen wherein he relates the conversation that took place during a meeting he had with alleged sheriff Thayer, Highway Patrolman St. Claire, alleged Police Chief Mechesnic and Colville Mayor Nichol.

137. The statements Rasmussen related to us reveal all the elements required to establish the crime of conspiracy; they told Rasmussen that they wanted me prosecuted and jailed for no other reason than to teach me a lesson because I was too outspoken about their corruption. These officials even attempted to coerce Rasmussen into acting in concert with them by threatening him. These acts constitute;

The failure of state and local officials to comply with the Constitutionally mandated oath of office;

The failure of state and local officials to comply with federal law relating to the taking of this oath pursuant to 4 USC sec. 101 and sec. 102;

The failure to take action against officials and alleged officials that violate the law;

The failure to enforce the RCW's as written in lieu of misinterpreting the law to accomplish their own unlawful ends.

138. My wife and I had been attempting to expose the criminal conspiracy against us for several years before Rasmussen took over the office of prosecutor, but no one would listen.

139. The fact that my wife had been falsely charged with a crime and it was dismissed in her favor; within a two-year period I was falsely charged with 5 criminal offenses and they were all dismissed in my favor, the recorded conversation with Rasmussen established the fact beyond any reasonable doubt.

140. Subsequently these officials conspired with others to steal, or cause to be stolen, our personal belongings and property.

141. The theft and cover-up has now been ongoing for over 36 months, this declaration is a continuing effort to find someone in a position of authority who will uphold his or her oath of office and enforce the laws as written.

142. I have contacted State legislators, but again it is not within their duties, so what happened to the People's Rights when local alleged officials are breaking the law?

143. I have even talked directly to the United States Attorney, Mr. McDevitt in Spokane and was told he did not think the recording with the Stevens county prosecutor, Mr. Rasmussen was legal and, besides that he said the Stevens county sheriff was a friend of his.

144. I was told by FBI supervisor, Frank Harrel that he was not going to aggrieve his career by getting involved in this matter.

145. As the Courts have repeatedly ruled, a pro se still has a Right to a fair and impartial hearing before all courts in this country.

*State v. Justice Court of Evangeline Starr, 32 Wn.2d 544 (1949) "We have expressly recognized that the administration of justice is dependant upon the impartiality, disinterestedness, and fairness on the part of the judge. In State ex rel. Barnard v. Board of Education, 19 Wash. 8, 52 Pac. 317, 6 Am. St. 706, 40 I.R.A. 317 we said:*
　　*"The principal of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of courts; in fact, the administration of justice through the mediation of courts is based upon this principle. It is a fundamental idea, running through and pervading the whole system of judicature, and it is the popular*

*acknowledgement of the inviolability of this principle which gives credit, or even toleration, to decrees of judicial tribunals. Actions of courts which disregard this safeguard to litigants would more appropriately be termed the administration of injustice, and their proceedings would be as shocking to our private sense of justice as they would injurious to the public interest".*

I, Jimmy Ellis, Clark do declare under penalty of perjury of the laws of The united States of America" that the foregoing is true, correct, and complete to the best of my knowledge and belief, so help me God.

Date Apr. 7, 2010

Jimmy Ellis, Clark
2094 Onion Creek Rd. Lot A
Colville, Washington